UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| CATHARINE CADIGAN, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) No. 2:24-cv-00100-NT |
| | ) |
| GENESIS ELDERCARE | ) |
| PHYSICIAN SERVICES INC., | ) |
| d/b/a GENESIS PHYSICIAN | ) |
| SERVICES, and GENESIS | ) |
| ADMINISTRATIVE SERVICES, | ) |
| LLC, | ) |
| | ) |
| Defendants | ) |

### ORDER ON MOTION TO STAY LITIGATION AND COMPEL ARBITRATION[1]

In this case, Catharine Cadigan, M.D., brings federal and state employment claims against Genesis Eldercare Physician Services, LLC, d/b/a Genesis Physician Services (GPS), and Genesis Administrative Services, LLC (GAS). *See* Amended Complaint (ECF No. 7). GPS and GAS are both affiliates of Genesis Healthcare, Inc., which has over 250 skilled nursing centers and senior living communities across the country. *See id.* ¶¶ 2-4. GPS provides clinical, administrative, and practice management services in Genesis Healthcare centers, while GAS provides administrative services including accounting, benefits, and technology support. *See id.* ¶¶ 3-4; ECF No. 13-1 at 13. Cadigan was hired by GPS as the medical director

---

[1] The First Circuit has held that a motion to stay litigation and compel arbitration is nondispositive. *See PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 13-14 (1st Cir. 2010).

1

of two Genesis Healthcare facilities in Maine in January 2021; her role expanded to cover several additional Maine-based facilities until GPS terminated her employment in March 2022.  *See* Amended Complaint ¶ 7-8, 12, 23, 41.

At the outset of her employment, Cadigan signed a written agreement between her and her "Employer" mutually agreeing "to the resolution by arbitration of all disputes, claims or controversies, past, present or future, including without limitation, claims arising out of or related to [her] application for employment, employment, and/or the termination of [her] employment that [her] Employer may have against [her] or that [she] may have against" her Employer.  See ECF No. 13-1 at 4.  The mutual arbitration agreement defines "Employer" as "the business entity that employs [Cadigan], including without limitation, Genesis Administrative Services, LLC, and/or any direct or indirect parent, subsidiary, division or affiliate of Genesis Administrative Services LLC to whom [she] applied for employment and/or with whom [she is] and/or was at any time employed."  *Id.*  Cadigan also agreed to arbitrate any claims against her Employer's "agents" and "business partners," "each and all of which may enforce" the agreement.  *Id.*

GPS and GAS now move for an order staying this case and compelling Cadigan to arbitrate her claims against them pursuant to the mutual arbitration agreement. *See* Motion (ECF No. 13).  Cadigan does not contest that she signed the agreement or that the types of claims she is making fall within its scope, nor does she suggest that arbitration has been waived.  *See* Opposition (ECF No. 16); *Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 4 (1st Cir. 2012) (holding that defendants seeking to compel

arbitration under the Federal Arbitration Act (FAA) must demonstrate that (1) "there exists a written agreement to arbitrate," (2) "the dispute falls within the scope of the arbitration agreement," and (3) they have "not waived [their] right to arbitration" (cleaned up)). Indeed, Cadigan even concedes that she must arbitrate her claims against GPS. *See* Opposition at 1. But she does argue that she did not agree to arbitrate her claims against GAS. *See id.* at 1-5.

The parties agree that Maine law controls the determination of whether a valid agreement to arbitrate exists between Cadigan and GAS. *See* Motion at 9-10; Opposition at 5; *Gove*, 689 F.3d at 4. Under Maine law, a "contract is to be interpreted to effect the parties' intentions as reflected in the written instrument, construed with regard for the subject matter, motive, and purpose of the agreement, as well as the object to be accomplished." *V.I.P., Inc. v. First Tree Dev. LLC*, 2001 ME 73, ¶ 3, 770 A.2d 95 (cleaned up). Along those lines, a "third-party"—that is, a nonsignatory—"to a contract may be a beneficiary entitled to enforce contract provisions if that right was within the expectation or intention of the parties to the contract." *Mountain Valley Prop., Inc. v. Applied Risk Servs.*, No. 1:15-cv-00187-DBH, 2015 WL 13729967, at *7 (D. Me. Dec. 22, 2015) (rec. dec.) (citing *Davis v. R C & Sons Paving, Inc.*, 2011 ME 88, ¶ 12, 26 A.3d 787), *aff'd as modified*, 2016 WL 755614 (D. Me. Feb. 25, 2016).

In this case, the mutual arbitration agreement was executed by Cadigan and GPS (although, notably, the "Assistant Secretary" of GAS, the "[c]ontracted administrative services provider for [GPS]," signed the agreement as an "Authorized

3

Representative" of GPS). *See* ECF No. 13-1 at 6. GAS is, therefore, a third-party to the agreement. The question is, then, whether the agreement reflects an intention or expectation by Cadigan and GPS that GAS would also be able to enforce the agreement. For two separate reasons, I conclude that it does.

First, Cadigan agreed to arbitrate claims against her "Employer," which, under the terms of the mutual arbitration agreement, "includes the business entity that employ[ed her], including without limitation, [GAS] and/or any direct or indirect parent, subsidiary, division or affiliate of [GAS] to whom [she] applied for employment and/or with whom [she] . . . was at any time employed." *See id.* at 4. The most reasonable reading of this language is that Cadigan's "Employer" includes GAS and any related entity that directly employed her such as GPS. *Cf. Espinoza v. CareerStaff Unlimited Inc.*, No. 3:21-cv-0878-E, 2022 WL 313434, at *3 (N.D. Tex. Feb. 2, 2022) ("The Agreement is between Plaintiff and her 'Employer.' 'Employer' is defined as 'the business entity that employs' Plaintiff, which includes Genesis Administrative Services ("GAS") and any of GAS's direct or indirect parents, subsidiaries, divisions, or affiliates with whom Plaintiff was at any time employed."); *Loc. Div. 589, Amalgamated Transit Union v. Massachusetts*, 666 F.2d 618, 627 (1st Cir. 1981) ("[T]he words 'and/or' commonly mean 'the one or the other or both.'"). That GAS is included in the agreement's definition of Employer makes manifest that Cadigan and GPS intended that Cadigan would arbitrate any claims against GAS and that GAS would be able to enforce the agreement.

Second, even accepting Cadigan's argument that GAS does not fall within the mutual arbitration agreement's definition of "Employer" because it was not the entity that directly employed her, she also agreed (1) to arbitrate any claims against her Employer's "agents" and "business partners" and (2) that such entities could enforce the agreement. *See* ECF No. 13-1 at 4. As GPS and GAS point out, GAS falls within the plain meaning of an agent or business partner of GPS—GAS signed the agreement as GPS's "Authorized Representative" and it is obvious even from just the agreement that GAS and GPS are part of the same overall Genesis Healthcare business enterprise. *See id.* at 4-6; Motion at 3; *Dow v. Billing*, 2020 ME 10, ¶ 14, 224 A.3d 244 (noting that courts must "seek to give effect to the plain meaning of the words used in [a] contract"); *Agent*, Black's Law Dictionary (12th ed. 2024) (defining "agent" as "someone who is authorized to act for or in place of another; a representative"); *Partner*, Black's Law Dictionary (defining "partner" as "[s]omeone who shares or takes part with another, esp[ecially] in a venture with shared benefits and shared risks"). Accordingly, this language separately shows that Cadigan and GPS intended that Cadigan would arbitrate any claims against GAS and that GAS would be able to enforce the agreement.

Because GPS and GAS have established the existence of a valid written arbitration agreement between Cadigan and them, and Cadigan does not contest that her claims fall within the scope of that agreement or assert that arbitration has been waived, I will **GRANT** GPS and GAS's motion, **COMPEL** Cadigan to proceed to arbitration with her claims, and **STAY** this case pending arbitration. *See* 9 U.S.C.

5

§§ 2-4.[2]  The parties are **ORDERED** to notify the Court as soon as arbitration is complete and, in the meantime, file a status report every three months.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the District Court and to any further appeal of this order.*

Dated:  March 10, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge

---

[2] To the extent GPS and GAS ask in the alternative that this case be dismissed in light of the binding arbitration agreement, *see* Motion at 16, the Supreme Court has recently clarified that, when "a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration"; rather, "§ 3 of the FAA compels the court to stay the proceeding," *Smith v. Spizzirri*, 601 U.S. 472, 475-76, 478 (2024).

6